

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| CANDACE SELLERS; MARK PARMLEY; PAUL PARMLEY; ESTATE OF JOHN PARMLEY, | } } } } | |
| Plaintiffs, | } } | |
| vs. | } } | CASE NO. 6:09-cv-0131-SLB |
| MODERN WOODMEN OF AMERICA, | } } } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is before the court on plaintiffs' Motion to Allow Further Discovery, (Doc. 34),[1] defendant's Motion for Summary Judgment, (Doc. 21), and defendant's Motion to Strike, (Doc. 30). Plaintiffs have sued defendant Modern Woodmen of America ("Modern Woodmen") in breach of contract to recover death benefits allegedly due under the terms of decedent's policy of life insurance. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiffs' Motion to Allow Further Discovery is due to be denied, defendant's Motion to Strike is due to be granted in part and denied in part, and defendant's Motion for Summary Judgment is due to be granted.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

# I.  FACTUAL AND PROCEDURAL HISTORY[2]

On September 1, 1986, Modern Woodmen, a Fraternal Life Insurance Society, issued a Certificate of Insurance ("Certificate") on the life of John Parmley.  (Doc. 22-3, at 6-17; Doc. 34-1 at 1.)  The entire contract of the life insurance policy includes the articles of Incorporation and By-Laws (collectively, "By-Laws") of Modern Woodmen of America in addition to the Certificate and policy application.  (Doc. 22-3 at 16.)  Included as a rider to the Certificate was a Waiver of Monthly Deductions Rider ("Waiver") which provided that, in the event that the insured should become totally disabled, Modern Woodmen agreed to waive the monthly premium deductions from the Certificate.  (Doc. 22-3 at 18.)  The Waiver defines "total disability" as a disability which "1) Results from bodily injury or disease; 2) Prevents the Insured from engaging in an occupation for wage or profit; and 3) Has been

---

[2]  As required when evaluating a motion for summary judgment, the court states the facts and all reasonable inferences arising from them in the light most favorable to the plaintiffs, the nonmoving party.  *See, e.g., Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citations omitted)).

The court notes that plaintiffs failed to abide by the court's Summary Judgment Requirements, set forth in Exhibit A to the Scheduling Order, (doc. 19, Ex. A), in filing their responsive brief.  First, one opposing summary judgment shall set forth its disputes, if any, with the movant's claimed undisputed facts in "*separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts."  (*Id.* at D. 2. a.)  The statements of fact must be followed by a "specific reference to those portions of the evidentiary record upon which the dispute is based."  (*Id.*)  Exhibit A also permits the non-movant to set forth additional undisputed facts and additional disputed facts, consistent with the above format.  (*Id.* at D. 2. b. & D. 2. c.)  Plaintiffs' brief is deficient as to each of the above requirements.  Although the court may strike plaintiffs' non-compliant "Statement of Facts" pursuant to Exhibit A it declines to do so. However, as set forth in Exhibit A, the court deems defendant's Statement of Facts to be admitted for summary judgment purposes.  (*See id.* at D. 2. a.)

continuous for at least six months." (*Id.*)  The Waiver expressly requires timely proof of disability as follows:

> **PROOF OF DISABILITY.**  Before any Monthly Deductions will be waived, proof of total disability must be received by the Society at its Home Office:
> 1) During the lifetime of the insured;
> 2) During the continuance of total disability; and
> 3) Within one year after the expiry date for this rider.

(*Id.*)  The Waiver also provides that "[f]ailure to give such timely proof will not cause any claim to be reduced if it is shown that such proof was given as soon as was reasonably possible." (*Id.*)

Under the General Provisions of the Certificate, Modern Woodmen is obligated to provide its insured with an annual report, which shows, among other things, the current cash value, current death benefit, and current certificate loans.  (*Id.* at 16.)  The provision also states,  "If it is known, based on guaranteed assumptions and no further premium payments, that the certificate will terminate before the next annual report, a notice to that effect will be given in the report." (*Id.*)  Each year, Modern Woodmen sent Mr. Parmley an Annual Report which listed as available benefits, among other items, the death benefit and the Waiver of Monthly Deductions.  (Doc. 22-3, p.3 ¶ 3, Gackle Aff. & p. 28, Ex. B.)  The Report also contained information as to when the Certificate would expire based on guaranteed and illustrated interest rates and insurance costs if no additional premium payments were made. (*Id.*)  Mr. Parmley made his last premium payment in August 1996.  (*Id.* at 3 ¶ 4.)  The Certificate entered a grace period on May 1, 2005, and Modern Woodmen sent a Termination

Notice to Mr. Parmley which advised him that the Certificate would expire on July 1, 2005 if premium payments were not made by the insured. (Doc. 22-3 at 30.) The insurance certificate expired without value on July 1, 2005.[3] (Doc. 22-3 ¶ 6, Gackle Aff.)

Mr. Parmley died on July 17, 2005 as a result of a heart attack. (Doc. 1, Ex. A at 16 ¶ 18.) Prior to his death, Mr. Parmley suffered from depression, coronary artery disease, and other medical problems. (*Id.* at 14 ¶ 12; Doc. 29-3 at 28-80, Medical Records.) On or around April 1999, Mr. Parmley had stopped working because of his debilitating condition. (Doc. 29-2 at 2, Sellers Decl.) Modern Woodmen did not receive any proof of Mr. Parmley's alleged total disability during his lifetime. (Doc. 22-3 at 4 ¶ 5, Gackle Aff.)

Shortly after Mr. Parmley's death, the plaintiffs requested that Modern Woodmen tender the benefits payable to them as named beneficiaries under the policy. (Doc. 1, Ex. A at 16 ¶ 19.) Plaintiffs submitted medical documentation of Parmley's alleged disability in May and August of 2008, three years after Parmley's death.[4] (Doc. 29-3 at 2-3, Martin Aff.)

---

[3] As discussed below, the court allowed limited discovery on the issue of policy expiration date after the parties' summary judgment briefs were filed. Plaintiffs did not file anything after the period of limited discovery to indicate that they still disputed July 1, 2005 as the expiration date.

[4] The court notes that at oral argument on defendant's Motion for Summary Judgment, plaintiffs' counsel argued that medical records were supplied to Modern Woodmen as early as January 2006, six months after Mr. Parmley's death. Neither of plaintiffs' summary judgment responses (the response now before the court and plaintiff's earlier Rule 56(f) Motion) alleged this "fact." There is evidence that some medical records were forwarded to Modern Woodmen early in 2006. (Doc. 3, Ex. C, p. 12, Motion to Dismiss.) On January 24, 2006, Modern Woodmen wrote plaintiff Parmley and stated, "The medical records submitted do not indicate total disability, nor has such information been provided by his attending physician." (*Id.*) The specific content and scope of the medical records at issue in this correspondence is not part of the record before the court.

Modern Woodmen denied payment of death benefits, alleging the policy had lapsed prior to Parmley's death and the requirements for triggering the Waiver's application had not been fulfilled.  (*Id.* at 3.)

In December 2008, plaintiffs sued Modern Woodmen and agent E.B. Pinkerton, alleging counts of (1) breach of contract, (2) bad faith refusal to pay, (3) negligence, and (4) fraudulent misrepresentation.  (Doc. 1 at 16-22.)  On defendants' motions, (Docs. 3 & 4), all claims except the breach of contract claim against Modern Woodmen were dismissed, (Doc. 15).  In the remaining breach of contract claim, plaintiffs allege that Modern Woodmen "breached promises of service in connection with contractual obligations set forth in the policy issued to Mr. Parmley and has wrongfully refused to pay his death benefit to the Plaintiffs."  (Doc. 1 at 17 ¶ 26.)  The Complaint alleges, "Had service been provided, it would have been ascertained that Mr. Parmley needed to invoke the waiver of premium disability provision."  (*Id.* at 15.)

On March 19, 2010, Modern Woodmen moved for summary judgment on the contract claim, arguing that there can be no breach of contract where the contract expired prior to Parmley's death, and where the disability Waiver was never triggered because proof of disability was not provided during Parmley's lifetime or as soon as reasonably possible. (Doc. 22.)  In Response, plaintiffs filed a Motion pursuant to Fed. R. Civ. P. 56(f),[5] asking the court to withhold ruling on the Motion for Summary Judgment until plaintiffs had the

---

[5]  Effective December 2010, this Rule is now found at Fed. R. Civ. P. 56(d).

opportunity to conduct further discovery.  (Doc. 24.)  In the Motion, plaintiffs sought to take the deposition of Judy Gackle, the Manager of defendant's claim department.  The court denied this Rule 56(f) Motion, (Doc. 28), but allowed plaintiffs to respond to the Motion for Summary Judgment and held oral arguments on August 5, 2010.

By court order entered on August 20, 2010, (Doc. 33), the court permitted the parties to conduct limited discovery only on the issue of calculation of the policy's lapse.[6]  In a status conference held on August 19, 2010, the court also instructed the defendant to produce the articles of Incorporation and By-laws to the Certificate, which defendant had not previously produced.  In the Motion to Allow Further Discovery presently before the court, plaintiffs now claim that discovery is warranted on certain sections of the By-Laws.  Defendant opposes the Motion.

As permitted by the court, defendant filed a Supplement in Support of Motion for Summary Judgment on November 18, 2010, stating that the limited discovery permitted by the court "has conclusively demonstrated that the insured's certificate expired without value on July 1, 2005."  (Doc. 37 at 2.)  Plaintiffs did not file a response to defendant's Supplement.[7]

---

[6] This issue was not raised in the Complaint, but was raised in the plaintiffs' evidentiary submissions in support of their Motion to Remand, (Doc. 7-2), and in opposition to summary judgment, (Doc. 29-3 at 10).

[7] In the court's order dated August 20, 2010, in which the court permitted defendant to file a supplement to its Motion for Summary Judgment within 90 days, the court directed the parties to adhere to the court's Summary Judgment requirements related to submissions as set out in Exhibit A to the court's October 13, 2009 Scheduling Order, which states that responsive

## II.  MOTION TO ALLOW FURTHER DISCOVERY (Doc. 34)

**Federal Rule of Civil Procedure 56(f)[8]**

Rule 56(f) of the Federal Rules of Civil Procedure provides:

If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

1.      deny the motion;

2.      order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

3.      issue any other just order.

Fed. R. Civ. P. 56(f).[9]  Under Rule 56(f), a party who has no specific material contradicting

the movant's presentation may survive a motion for summary judgment if he presents valid

---

submissions of the party opposing summary judgment should be filed "not later than 21 days" after the motion for summary judgment is filed.  (Doc. 19-1 at 1.)

[8]  The court will construe plaintiffs' assertion that further discovery is warranted as a motion pursuant to Rule 56(f), despite the absence of an affidavit.  *See Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 560 (11th Cir. 1990) (quoting *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988)) ("[T]he opposing party need not file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) in order to invoke the protection of that rule because 'the written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances.'").

[9]  Rule 56 has been amended since the parties filed this action.  The current version of former Rule 56(f) is now found in Rule 56(d), which has modified the language but maintained the substance of former Rule 56(f). If a motion for summary judgment was filed prior to the amendment taking effect, but did not come under submission until after said date, as here, it seems logical to apply the old version of the rule to the entire thread of responses and replies to the motion.  Accordingly, the court will use the version of Rule 56 in effect at the time summary judgment was filed for purposes of the Motion to Allow Further Discovery, the Motion to Strike, and the Motion for Summary Judgment.

reasons justifying his failure of proof. *Florida Power & Light Co. v. Allis Chalmers*, 893 F.2d 1313, 1316 (11th Cir. 1990) (citation omitted). The nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but . . . must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Wallace v. Brownell Pontiac-GMC Co., Inc.*, 703 F.2d 525, 527 (11th Cir. 1983) (citations and internal quotations omitted). The nonmovant also "bears the burden of calling to the district court's attention any outstanding discovery." *Reflectone, Inc. v. Farrand Optical Co., Inc.* 862 F.2d 841, 844 (11th Cir. 1989) (quoting *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 859 F.2d 865, 871 (11th Cir.1988)).

"Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998); *see also Wallace*, 703 F.2d at 527 (noting that "[R]ule 56(f) is infused with a spirit of liberality"). "If the court is satisfied with the nonmovant's explanations, the court may deny the [summary judgment] motion without prejudice or may simply order a continuance." *Florida Power & Light* Co., 893 F.2d at 1316 (quoting *Wallace*, 703 F.2d at 527).

**Discussion**

In the Motion to Allow Further Discovery, plaintiffs request the opportunity to conduct discovery on various provisions of the By-Laws to determine the extent of

8

defendant's contractual obligations and whether those obligations were breached. (Doc. 34.)
The requested discovery pertains to Parmley's failure to file proof of disability within his
lifetime. This was also the subject of plaintiffs' previous Rule 56(f) Motion, (Doc. 24), in
which plaintiffs requested leave to depose Gackle regarding the language of the Policy and
the Waiver, defendant's receipt of medical records, and defendant's obligations to service
the Policy. The court denied that Motion, holding that the language of the policy was clear
and unambiguous and plaintiffs did not show how the testimony of Gackle would enable
plaintiffs to overcome the absence of a contract, express or otherwise, which obligated
defendant to service the policy. (Doc. 27.) The court held, "The Certificate makes clear that
the insured bears the burden to provide proof of disability in order to invoke the Waiver
provision. To impose upon Modern Woodmen the burden to inquire and discover potential
disability, absent another agreement, would be to re-write the present contract between the
parties." (*Id.* at 11.)

Plaintiffs now point to sections in the By-Laws which, they claim, show obligations
on the part of defendant to assist camp members in filing claims.[10] (Doc. 34 at 2 ¶ 4.) In
essence, the plaintiffs want to demonstrate that the defendant did bear the burden to assist
members with filing claims, and request discovery to investigate the extent of these

---

[10] The insurance certificate states, "An Insured of the age of 16 or more is an adult
member of the Society. An adult member has all of the privileges of membership as provided in
the By-Laws." (Doc. 22-3 at 16.) The By-Laws provide that "[a]ny number of persons residing
in any part of the territory, constituting the jurisdiction of this Society may petition the President
for a charter to organize a local Camp." (Doc. 34-1 at 16.)

obligations. Plaintiffs claim that, if these obligations were breached, Parmley's ability to file proof of disability would have been affected. (Doc. 34 ¶ 8.) The court finds that plaintiffs have again failed to demonstrate how postponement of the court's ruling on the summary judgment motion will allow plaintiffs, by requested discovery or otherwise, to defend against the motion. *Wallace*, 703 F.2d at 527.

### a. Discovery on Sections 2, 8, 87 & 115 of the By-Laws

First, plaintiffs request discovery on four sections of the By-Laws in order to determine whether certain expressly listed obligations in those sections provide a basis for imposing a duty on the defendant to service the Policy, provide insurance forms, and meet with and assist members, none of which are expressly mentioned. Plaintiffs make the following requests for discovery on these sections:

- "Section 2 of the Contract provides that its purpose is to provide a fraternal benefit society involving benevolence, assisting members, and providing death and disability benefits. Discovery is necessary as to whether or not part of the assistance to members and benevolence of this fraternal benefit society included meeting with members who request assistance or service and providing members with forms in order to make claims against the policy, and whether such forms would include a disability waiver of premium benefit form." ( Doc. 34 ¶ 4.)

- "Section 8 of the Contract reflects that dues of $0.35 per month were collected separate and apart from policy premiums so that members such as the decedent could enjoy all the rights, privileges, and benefits of membership... Discovery is necessary to ascertain if the rights, privileges and benefits included assistance, policy service and provision of forms." (*Id.* ¶ 7.)

- "Section 87 of the Contract reflects that a camp may be established by the National Secretary and that the charter rituals, blanks, and such

supplies are necessary for use in the local camp and are sent to the field representative organizing the camp.  Discovery is therefore necessary as to whether or not the supplies included disability waiver of premium forms that the local camp was then in turn supposed to furnish to the decedent." (*Id.* ¶ 9.)

- "Additionally, the Contract lists the duties of the camp secretary [in Section 115] to include promotion of camp fraternal activities and community service projects, keeping records, minutes and accounts of the local camp.  Discovery is therefore necessary as to whether or not this would include providing policy service to camp members as well as forms and a discussion or explanation of policy provisions." (*Id.* ¶ 10.)

In sum, plaintiffs want to investigate whether these provisions, which expressly list certain obligations, also somehow encompass other duties *not* expressly stated.

The requested discovery on these sections boils down to a matter of contract interpretation.  As discussed in the court's previous Memorandum Opinion denying plaintiffs' first Rule 56(f) Motion, "[W]here the language of the contract is plain and unambiguous, there is no room for construction and it is the duty of the court to enforce it as written." *All States Life Ins. Co. v. Steward*, 5 So. 2d 784, 786 (Ala. 1942).[11]  Nothing about these provisions is ambiguous, and nothing in them even hints at a duty to meet with members, provide forms, or provide policy service.  In determining the obligations of contracting parties, the court looks only to the contract as written, and the "rights, privileges, and benefits" mentioned in these provisions can only refer to rights, privileges and benefits

---

[11]   The law of the state where the insurance policy is issued controls the interpretation of the insurance contract.  *See Best v. Auto-Owners Ins. Co.*, 540 So. 2d 1381, 1383 (Ala. 1989).

as stated in the By-Laws. (*See* Doc. 34-1 at 25) ("The purpose of the Society shall be . . . to provide death, disability, and other benefits, rights and privileges as authorized by its By-Laws"). The text of the purpose provision, which the plaintiffs did not fully quote in their Motion, states that the Society's purpose is to "promote fraternal relationships and foster acts of fraternity, charity, and benevolence by and among its members" and "to assist its members in living in harmony with their environment." Clearly, nothing about meeting with members, helping with their insurance claims, or providing forms to members is mentioned in this provision or in the other quoted provisions discussing the duties of the camp secretary, the National Secretary, or the rights conferred by payment of dues.  The court refuses to allow plaintiffs to go on a "fishing expedition," as defendant characterizes the plaintiffs' Motion, to find such duties through discovery on these sections, when they are not expressly stated in them.  If these provisions were intended to establish an obligation to meet with members, help with claims, and provide forms, they would say so.  They do not.

**b.  Discovery on Section 88 of the By-Laws**

The plaintiffs also desire to conduct discovery on whether Parmley's local camp was holding regular meetings once a month, as expressly required by Section 88 of the By-Laws. (Doc. 34 at 2 ¶ 6.)  Plaintiffs wish to investigate whether defendant had an obligation to provide forms for making claims, and "whether such forms would include a disability waiver of premium benefit form."  (Doc. 34 ¶ 4.)  Plaintiffs state, "There is evidence reflecting that one of the reasons why the disability waiver of premium claim was denied was because the

Defendant had not received a form. Discovery is therefore necessary to further flesh out the fact that the reason why the Defendant did not receive a form is because the local camp was not holding its meetings as required by the Contract. . ."  (Doc. 34 ¶ 9.)  Plaintiffs further argue:

> Section 18 of the Contract indicates there can be no waiver of the bylaws by a local camp.  Therefore, **the failure to hold monthly meetings and to allow the decedent all the rights and privileges of membership is a breach of contract and certainly an issue for which further discovery should be allowed.**  The failure to provide assistance and policy service upon repeated requests and the lack of access to monthly meetings clearly affected Mr. Parmley's ability to obtain the understanding needed to file a claim.  Given his depression and the strong evidence of his lack of functionality in tending to personal and financial matters, this assistance was critical.

(Doc. 34 ¶ 8) (emphasis added.)

The court first notes that the Complaint does not allege a breach of contract arising from defendant's failure to hold monthly meetings or a failure to provide Parmley with appropriate forms.  While the Complaint alleges a breach of promises to service, (Doc. 1 ¶ 26), the court does not find that a failure to hold monthly camp meetings falls under an alleged breach of a promise to service Parmley's insurance policy.  Even assuming it does, the Contract gives no information about what occurs at monthly camp meetings.  Nothing in the provision discussing monthly meetings indicates that policies are serviced or that defendant provided any kind of forms at the meetings.  Elsewhere, the By-Laws do state that "[c]laims under any certificate or rider shall be submitted on forms prescribed by the Board

of Directors," (Doc. 34-1 at 8),[12] and it is true that a denial of death benefits letter sent by Modern Woodmen in January 2006 noted, "No request for waiver claim forms was ever made by your father," (Doc. 3 at 12). However, submitting a "claim," for which the Society appears to provide forms, is not equivalent to filing "proof" of disability. At issue in this case is Parmley's submission of proof of disability, not his submission of a claim. Even if Parmley did have the appropriate forms for submitting a *claim* on the waiver, that would not have relieved him of his obligation to provide *proof* of disability, which it is undisputed that Parmley did not do during his lifetime.

In order to show that further discovery is warranted on the breach of the obligation to hold monthly meetings, plaintiffs must demonstrate that the requested discovery will enable them to defeat summary judgment. *Wallace*, 703 F.2d at 527. The court has already held that providing proof of disability either during the lifetime of the insured or as soon as reasonably possible was a condition precedent to the Waiver's application, and that the insured did not satisfy the terms of that condition. (Doc. 27 at 7-9.) Plaintiffs seem to claim that Parmley could not satisfy that condition because of defendants' breach of its promises to service and the defendant's failure to help Parmley submit proof under the Waiver. However, plaintiffs have again failed in this Motion to point to evidence in the contract of a promise to service or to provide such assistance. The only potential breach of an express

---

[12] Cited page numbers of the By-Laws and Articles refer to the page numbers of the document on the CM/ECF version, (Doc. 34-1), not the internal page numbers of the By-Laws.

14

contractual obligation that the plaintiffs have raised, presumably as subsumed within a promise to service the contract, is the failure to hold monthly camp meetings.  The obligation to hold monthly camp meetings is only relevant if it would relieve plaintiffs of the failure to fulfill the condition precedent of submitting timely proof of disability.  In order for this to be the case, the lack of monthly meetings must have been a material breach of the contract, or a breach of an express or implied condition to plaintiff's duty to perform.  *Bd. of Water & Sewer Com'rs of City of Mobile v. Bill Harbert Const. Co.*, 27 So. 3d 1223, 1252 (Ala. 2009) (quoting *Health Care Mgmt. Corp. v. Rubenstein*, 540 So. 2d 77, 78 (Ala. Civ. App. 1989) ("Because of the defendant's material breach of the contract, the plaintiff's future performance of the contract was excused and the plaintiff had an immediate cause of action for that breach.")).  The failure to hold monthly meetings would not be a material breach of the insurance contract.[13]  The holding of monthly meetings is clearly not a condition precedent to an insured's submission of proof of disability.  Based on the plain language of the contract, there simply is no support for a connection of any kind between the occurrence or nonoccurrence of monthly meetings and an insured's submission of proof of disability.

---

[13] "According to the Restatement (Second) of Contracts § 241 (1976), circumstances significant in determining whether a breach is material include:
> '(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.'"

*Rose v. Davis*, 474 So. 2d 1058, 1061 (Ala. 1985).

While plaintiff claims that, given Parmley's "lack of functionality," the defendant's failure to assist him with his insurance needs was "critical," Parmley's poor health condition did not relieve him of the burden to file proof of disability or shift that burden to the defendant. *See Mutual Life Ins. Co. of New York v. Brunson*, 20 So. 2d 214, 217 (Ala. 1944) (holding that, where insurance policy contained requirement that proof of disability must be furnished to the insurance company while no premium was in default, insanity of insured did not excuse him from complying with that condition). The Waiver states that the insured has the obligation to submit proof of disability within the lifetime of the insured or as soon as is reasonably possible. (Doc. 22-3 at 18.) The law does not impose a requirement on defendant to provide forms for filing proof of disability or to otherwise assist the insured at monthly meetings when such a requirement is not expressly stated in the contract. Doing so would have the effect of rewriting the contract. *See Lipscomb v. Reed*, 514 So. 2d 949, 950 (Ala. 1987). "[I]t is the duty and function of the court to construe and enforce the contract as it is written, and not to attempt to make a new contract for the parties, nor, by implication or construction, to add to the contract words, terms, or conditions, exceptions, promises, or obligations which it does not contain." *McGifford v. Protective Life Ins. Co.*, 151 So. 2d 349, 351 (Ala. 1933).

For all these reasons, the court finds that further discovery on the Society of Modern Woodmen's objective as stated in its By-Laws to hold monthly meetings would not enable

plaintiffs to create a genuine issue of material fact regarding Parmley's failure to submit timely proof of disability.

### c. Discovery on Fraternal Benefits

Lastly, the court rejects plaintiffs' claim that "[defendant's] adding the word 'fraternal' in connection with the insurance benefit provided to the decedent was not merely a marketing ploy but consisted of a contractual duty." (Doc. 34 ¶ 11.)  Plaintiffs claim, without citing to evidence in support, that the "fraternal benefit meant looking after members of the local camp including meeting with local members when requested, providing monthly meetings, and it appears providing forms as well. . . It is clear . . the Defendant had a contractual duty to assist members on a regular basis. . . " (*Id.*)  Importantly, however, the By-Laws explicitly state that "[n]o member shall have a contractual right to any fraternal benefits provided by the Society." (Doc. 34-1 at 4.)  Therefore, fraternal benefits, even if stated in the contract, would not create a  contractual duty, and the court has found no obligations in the contract that would give rise to a duty to provide disability forms, meet with members, or otherwise service the policy.

For the foregoing reasons, the court is of the opinion that plaintiffs have not met their burden to demonstrate a specific need to conduct more discovery on the provisions of the By-Laws cited by the plaintiffs.  Accordingly, plaintiffs' Motion to Allow Further Discovery, (Doc. 34), will be denied.

## III. MOTION TO STRIKE (Doc. 30)

In ruling on a Motion for Summary Judgment, a district court may only consider evidence that would be admissible at trial. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Accordingly, the court must rule on a motion to strike evidence before determining whether summary judgment should be granted.

In the Motion to Strike, (Doc. 30), defendant moves the court to strike the declarations of Betty Warren and Candace Sellers, (Docs. 29-1 & 29-2), which plaintiffs filed in opposition to summary judgment. Defendant argues that the declarations contain "hearsay, speculation, unsubstantiated conclusions, and improper opinion testimony." (Doc. 30 at 1.) Defendant also argues that the Warren Declaration violates the parol evidence rule. (*Id.*) Plaintiffs did not file an opposition to the Motion.

### 1. Parol Evidence Rule

The parol evidence rule dictates when a court may consider extrinsic evidence in determining the contents of a contract. "[W]hen the parties reduce a contract to writing, intended to be a complete contract regarding the subject covered by that contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict such writing." *Alabama Electric Cooperative, Inc. v. Bailey's Construction Co., Inc.*, 950 So. 2d 280, 287 (Ala. 2006).

Defendant contends that the portions of the Warren Declaration that refer to an agreement or promise by defendant to service Parmley's policy violate the parol evidence rule.  Specifically, defendant quotes the following portions of the Declaration: "I made these promises of service to Mr. John William Parmley."; ". . .the policyholder is also purchasing a promise by the company to properly service the policy during the term of the policy"; "From my training  and experience with Modern Woodmen of America, this failure to service the policy was a breach of the agreement and promises between Mr. Parmley and Modern Woodmen of America."  (Doc. 29-1 at 1-2.)

In the Memorandum Opinion denying plaintiffs' previous Rule 56(f) Motion, this court referred to the integration clause contained in the Certificate to hold that the contract at issue consists only of the Certificate, the attached application, and the Articles of incorporation and By-Laws.  (Doc. 27 at 11.)  The court stated, "Where, as here, plaintiffs have not alleged fraud, an integration clause . . .precludes recovery based upon breach of an extrinsic promise."  (*Id.*)  Accordingly, the referenced statements contained in Warren's declaration are due to be stricken.

## 2. Inadmissible Hearsay

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay is inadmissible absent an applicable hearsay exception.  "[A] district court

may consider a hearsay statement in passing on a motion for summary judgment" only if "the out-of-court statement made to the witness. . . [would be] admissible at trial for some purpose." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

Defendant contends that "[s]ignificant portions of the declarations of Betty Warren and Candace Sellers either are the statements of others or are based on the statements of others" and should be stricken as hearsay. (Doc. 30 at 7.) Each alleged statement will be analyzed separately.

First, defendant contends that the following statements from the Warren Declaration, (Doc. 29-1), are hearsay:

- "I learned after I left Modern Woodmen of America that no other agent for the company met or contacted Mr. Parmley to properly service his life insurance policy."

- "After learning from Mr. Parmley that no one from Modern Woodmen of America had made contact with him, I again called Modern Woodmen of America in 2003 to raise my concerns."

- "He was led to believe that this service was part of the arrangement and he relied on this to the extent that he called me when I was no longer an agent wondering when an agent would come to check on his policy needs."

(Doc. 29-1 at 3.) The first statement is hearsay, the declarant lacks personal knowledge, and will be stricken. The second statement, which contains Parmley's statement that no one had made contact with him, is hearsay if offered to prove that no one from Modern Woodmen had contacted Parmley. However, if offered to prove why Warren called Modern Woodmen

20

in 2003, it would not be excluded as hearsay because it would be admissible to prove the effect on the listener. *See U.S. v. Issa*, 265 Fed. Appx. 801, 806 (11th Cir. 2008) (affirming district court's admission of police officer's hearsay testimony that explained how complaints of drug activity prompted him to begin his investigation where court instructed jury not to consider the testimony as proving the truth of the matter asserted by others, but rather to show the effect on the listener). The third statement, which refers to Parmley's "wondering when an agent would come [] check on his policy needs," is hearsay and is due to be stricken.

Next, defendant contends that the following statements from the Sellers Declaration, (Doc. 29-2), are hearsay:

- "My father spoke so highly of this company in large part due to its service and frequent contact with the client regarding insurance needs."

- "This was something that I relied upon and I know my father relied upon this service aspect of the policy as well because of statements he made after Betty Morris was no longer his agent."

- "My father spoke of the fact that he wondered who was going to contact him to assist with servicing the policy and making certain that his insurance needs were met."

(Doc. 29-2 at 2.) The court agrees that the statements of Sellers's father referenced by Sellers are hearsay and are due to be stricken.

Defendant points to several more statements from the Sellers Declaration that "may not appear at first blush to be inadmissible hearsay evidence," but "are necessarily based on

21

inadmissible hearsay." (Doc. 30 at 6.) Specifically, defendant cites to the following excerpts as hearsay:

- "I learned that he had not filed income taxes since the time of his heart surgery.  On another occasion, his power had been cut off because he had not paid his power bill.  He stopped using a regular house phone and that was cut off. . . Finally, my brother Mark Parmley handled his cell phone bill by it being sent to him so he could pay it."

- "[H]e was very limited as to what he could do with his employer."

- "Finally, due to his health he stopped working in April of 1999."

- "On occasion, my father would fail to make his mortgage payment.  He was two months behind several times."

- "One of the very reasons why my father . . . was led to purchase a Modern Woodmen policy was the policy service."

- "Despite Betty Warren's repeated attempts to obtain that service for my father, which I learned after my father's death, this policy was not serviced as it had been for many years."

(Doc. 29-2 at 2-3.)  The court agrees that all of these statements, except the third statement, are hearsay, as they are based on the statements of others.  The third statement, "Finally, due to his health he stopped working in April of 1999," is not hearsay, as it is likely based on the personal observations of Sellers.

## 3. Lack of Personal Knowledge and Improper Opinion Testimony

"Under Federal Rule of Civil Procedure 56(e), affidavits, supporting or opposing summary judgment, must be made on personal knowledge and must set forth facts that would

be admissible evidence." *McCaskill v. Ray*, 279 Fed. Appx. 913, 914-15 (11th Cir. 2008)

(citing *Macuba*, 193 F.3d at 1323; Fed R. Civ. P. 56).[14]  Under Federal Rule of Evidence 602,

> [a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

Fed. R. Evid. 602.  "[P]ersonal knowledge can be established by showing that the witness

was in a physical position to see, hear, or otherwise perceive the matters to which the

testimony relates." *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. 2000)

(citing Fed. R. Evid. 602).  Federal Rule of Evidence 701 governs the admissibility of lay

opinion testimony, stating:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [governing testimony by experts].

Both the Sellers and Warren declarations conclude with the statement that

"[t]his declaration is given of my own personal knowledge and is true and correct."

(Doc. 29-1 at 3; Doc. 29-2 at 4.)  However, the declarations also aver, "[The

declaration] is based upon my information and belief and is provided under penalty

---

[14]  Effective December 2010, the personal knowledge requirement for affidavits or declarations used in support or opposition of summary judgment is found at Fed. R. Civ. P. 56(c)(4).

of perjury." (Doc. 29-1 at 3; Doc. 29-2 at 4.) "Information and belief" is not the same thing as personal knowledge, and to the extent the declarations rely on information and belief, they will not create a genuine issue of material fact. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) ("Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'-instead of only knowledge-from raising genuine issues of fact sufficient to defeat summary judgment.").

Defendant contends that the following two statements from Betty Warren's declaration regarding the servicing of Parmley's policy are not based on personal knowledge or are improper opinion testimony:

- "I learned after I left Modern Woodmen of America that no other agent for the company met or contacted Mr. Parmley to properly service his life insurance policy."

- "After learning from Mr. Parmley that no one from Modern Woodmen of America had made contact with him. . ."

- "From my training an experience with Modern Woodmen of America, this failure to service the policy was a breach of the agreement promises between Mr. Parmley and Modern Woodmen of America."

(Doc. 29-1 at 3.) The court agrees that the first two statements are not based on Warren's personal knowledge. She cannot personally know whether any agents contacted or met with Parmley after she stopped working at Modern Woodmen. *See Maddox v. Aetna Cas. & Sur. Co.*, 259 F.2d 51, 53 (5th Cir. 1958) (affidavit containing facts told to affiant by others could not be considered on motion for summary judgment due to failure to satisfy personal

knowledge requirement);  McCormick on Evidence § 10 (6th ed.) (2009) ("Of course, a person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation.")  Accordingly, these statements will be stricken.[15]  The court has already stricken the third statement regarding Warren's opinion as to a breach of a promise to service as a violation of the parol evidence rule.

Defendant also objects to the following statements in the Warren Declaration as based on speculation:[16]

- "By meeting with the policyholders, agents could assess whether a policy holder may be a proper candidate for the premium waiver as a result of total disability or whether other life changes necessitated other service."

- "Had I still been Mr. Parmley's agent, I would have visited his home, and I would have realized the extent of his illness. . . Any agent would have known this."

(Doc. 29-1 at 3.)  The court disagrees that the first statement is speculation. In the declaration, the statement is followed by Warren's assertion that she "did this every year with every client" while she was employed at Modern Woodmen.  The court finds that what agents could do when meeting with policyholders, and the purpose of such meetings, is

---

[15]  These statements have also already been stricken as hearsay.

[16]  Deeming a statement speculative has the same effect as striking it due to a lack of personal knowledge. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007) (holding that district court did not abuse its discretion in excluding testimony evidence prior to consideration of the summary judgment motion where the testimony was found to be "inadmissible because it was not based on personal knowledge and was therefore speculative"). Therefore, defendant's objections to alleged speculative testimony will be assessed together with the objections to statements not based on personal knowledge.

within the realm of Warren's personal experience as an agent for Modern Woodmen, a position she held for 13 years.  However, the second statement is inherently speculative, as Warren cannot know whether she would have realized the extent of his illness, or whether "any agent" would realize this. Accordingly, the second statement is due to be stricken.

Defendant next contends that several statements in the Sellers Declaration are not based on personal knowledge and should be stricken. First, defendant points to the following excerpts in which Sellers refers to promises to service and a lack of contact between defendant and her father:

- "Unfortunately, to my knowledge no one from Modern Woodmen contacted him after Betty Morris ceased being his agent. . . This was the first contact regarding service on this policy. I strongly believe that this is wrong for a company to sell its policy with a promise of servicing that policy every year and then terminate a long held policy which would not have been terminated had the company fulfilled its promise to provide service in connection with that policy."[17]

- "One of the very reasons why my father as well as myself was led to purchase a Modern Woodmen policy was the policy service. Despite Betty Warren's repeated attempts to obtain that service for my father, which I learned after his death, this policy was not serviced as it had been for many years."

(Doc. 29-2 at 2-3.)  As with the similar statements from the Warren Declaration, Sellers could not have personal knowledge as to the alleged facts that no one from Modern Woodmen contacted her father, that Warren made repeated attempts to obtain service for her father, that

---

[17] Defendant also contends, and the court agrees, that this statement should be stricken because it is based on speculation.

the policy was sold with a promise to service,[18] and that the policy was not serviced. Therefore, these statements are due to be stricken.

Second, defendant points to the following portions of the Sellers Declaration that refer to Parmley's health condition and his practices with regard to his personal affairs:

- "However, in 1996, he had heart bypass surgery and he was very limited as to what he could do with his employer . . . [D]ue to his health he stopped working in April 1999."

- "On occasion, I would try to open his mail for him because he would just let the mail pile up and not open anything."

- "Modern Woodmen may have sent my father notices in the mail regarding his life insurance, but he did not open that mail or tend to the mail."

(Doc. 29-2 at 2-3.)  The court finds that the first statement is likely based on personal knowledge and therefore not due to be stricken.  Although she does not explicitly state the source of her knowledge regarding her father's surgeries, as Parmley's daughter, Sellers likely has personal knowledge of the fact that he had heart bypass surgery, the year, and the fact that he stopped working for health reasons in 1999.  Relating to the second and third statements, Defendant contends that "[n]othing in the declaration suggests that Candace Sellers was always with her father or with him so often that she could say what he did or did not do with his mail, and specifically his Modern Woodmen mail."  (Doc. 30 at 9.)  Sellers's averments that her father would let mail pile up without opening it is something she could

---

[18]  Sellers's allegation that the policy was sold "with a promise of servicing that policy every year" also violates the parol evidence rule.

27

personally observe when visiting her father. The declaration states that she "would try to open his mail for him," showing that she saw firsthand whether mail was opened or not. Accordingly, these three statements are not due to be stricken because they are based on Sellers's personal knowledge.

Defendant also objects to the following statements as not based on Sellers's personal knowledge or speculative:

- "Due to his depression and condition, it is likely that he simply threw the [lapse] notices away. If a Modern Woodmen agent had to [sic] come to my father's house anytime during the years 2000 through 2005, it would have been obvious that there was a problem and that my father was disabled."

- "If his health had remained strong, he would not have stopped working as he wanted to reach at least 35 years of service."

(Doc. 29-2 at 2-3.)  The court agrees that the fact that Parmley "likely" threw lapse notices away, as well as allegations regarding what "would have been obvious" to an insurance agent could not be based on Sellers's personal knowledge.  Also, Sellers's statement that, in her opinion, "it would have been obvious that there was a problem and that my father was disabled," is improper opinion testimony.  A determination of disability inherently involves scientific, technical, or other specialized knowledge, and, therefore, lay opinion testimony is inadmissible regarding whether Parmley was disabled.  See Fed. R. Evid. 701.  Accordingly, this statement is stricken.  The second statement is also impermissible as it attempts to draw a conclusion by way of speculation as to an event that might not have happened had Sellers's father not become sick.

Defendant also objects to the following statements in the Sellers Declaration: "I don't believe that [Modern Woodmen] has correctly calculated when the policy lapsed. . . I think Modern Woodmen also miscalculated the policy such that it should have lapsed only after my father died."  (Doc. 29-2 at 3.)  The court agrees with defendant that statements of fact based on the declarant's belief are insufficient to create a genuine issue of fact.  *Capobianco*, 283 F.3d at 1278-79 ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact.").  Accordingly, the first statement is due to be stricken. The second sentence regarding what Sellers "thinks" about the calculation of the policy, standing alone, is also improper opinion testimony and not based on personal knowledge, and will be stricken. However, the court notes that the Declaration shows that the basis of Sellers's opinion is an alleged statement made by Kathy Cox, a Modern Woodmen agent, that "there was still remaining cash value in the policy and she was surprised the claim was not paid." (Doc. 29-2 at 3.)  Cox's statement, as related by Sellers, is hearsay but could be admissible as either an admission of a party-opponent or a statement against interest.  *See* Fed. R. Evid. 801(d)(2), 804(b)(3).

Finally, defendant characterizes the following statements in the Sellers Declaration as improper lay opinion testimony under Rule 701:

- "My father also developed some mental health problems as he became very depressed due to his health. The last time I saw him enter in a major depression was after his surgery in 1996 when he became much more limited. The depression worsened over time. He was definitely

disabled from performing any type of full-time work." (Doc. 29-2 at 2, Sellers Decl.)

• "He loved them so much, but his condition worsened to where it was hard to get him to laugh or smile or stay attentive and involved in a conversation." (*Id.* at 3.)

• "My father should not have been paying for the insurance because he paid extra to have a waiver of premiums disability rider on the policy. His policy should have been paid by Modern Woodmen and provided for him from the day he had stopped working and through the day he died." (*Id.*)

• "Even aside from the fact that the waiver of premium benefit rider should have been a matter of service by an agent. . ." (*Id.*)

The portion of the first and second statements that refer to Parmley's worsening health condition is not improper opinion testimony, as Sellers could observe firsthand the quality of her father's health and the way he reacted to his family members. However, the statement that her father "was definitely disabled" is due to be stricken as improper opinion testimony, as disability is a legal term and defined in a particular way by the contract in this case. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (nonmoving party may not defeat summary judgment by "simply relying on legal conclusions" or "conclusory allegations"). Likewise, the last two excerpts that contain allegations that Sellers's father should not have had to pay premiums, that Modern Woodmen should have paid his policy, and that the waiver of premium benefit rider was "a matter of service by an agent" are improper opinion testimony. The statements contain legal conclusions and allegations regarding duties of

30

defendant's employees of which Sellers has no personal knowledge and they are not rationally based on her perception.  *See* Fed. R. Evid. 701; Fed. R. Civ. P. 56.

Defendant moves the court to strike the entire declarations of Betty Warren and Candace Sellers, arguing that, "[t]o the extent, if any, that admissible factual assertions are included in these declarations, they are so intertwined with hearsay and improper conclusions that they cannot be separated out."  (Doc. 30 at 14.)  A court may strike an entire affidavit "if inadmissible matter is [s]o interwoven or inextricably combined with the admissible portions that it is impossible, in the practical sense, to separate them."  *Southern Concrete Co. v. U.S. Steel Corp.*, 394 F. Supp. 362, 381 (N.D. Ga. 1975), *aff'd*, 535 F.2d 313 (5th Cir. 1976).  Although the court has not agreed to every specific objection raised by the defendant in its brief, the court agrees that any potentially admissible portions of Betty Warren's Declaration are so intertwined with the inadmissible potions that it would be practically impossible to separate them. However, the Sellers Declaration does contain some admissible testimony, such as Sellers's observations of her father's health condition, which the court will not strike.  Accordingly, the defendant's Motion to Strike is due to be granted with respect to the entire Warren Declaration, but granted only with respect to specific portions of the Sellers Declaration.[19]

---

[19]  The court notes that the admissibility of these Declarations does not affect the outcome of the Motion for Summary Judgment, which, as discussed below, hinges on whether a duty to service Parmley's policy is contained in the insurance contract.

## IV. MOTION FOR SUMMARY JUDGMENT (Doc. 21)

**Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), (now Fed. R. Civ. P. 56(a)),[20] summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every

---

[20] See footnote 9, *supra*.

inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)).

## Discussion

Plaintiffs claim that defendant breached "promises of service in connection with contractual obligations set forth in the policy issued to Mr. Parmley and has wrongfully refused to pay his death benefit to the Plaintiffs." (Doc. 1 ¶ 26, Compl.) They also allege, "Had service been provided, it would have been ascertained that Mr. Parmley needed to invoke the waiver of premium of disability provision." (*Id.* ¶ 16.) Defendant contends that it did not breach the insurance certificate, and that it had no other contract with Parmley aside from the Certificate. Defendant also argues that the policy lapsed due to nonpayment prior to Parmley's death and Parmley did not fulfill the requirements for triggering application of the disability Waiver. (Doc. 22 at 5-7.)

A plaintiff asserting a breach of contract action must prove: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 658 (Ala. 2002) (citation omitted);[21] *see also Seybold v. Magnolia Land Co.*, 376 So. 2d 1083 (Ala. 1979) ("'Breach' consists of the failure without legal excuse to

---

[21]   As noted previously, the law of the state where the insurance policy is issued controls the interpretation of the insurance contract. *See Best v. Auto-Owners Ins. Co.*, 540 So. 2d 1381, 1383 (Ala. 1989)

perform any promise forming the whole or part of the contract.")  Where, as here, plaintiffs have not alleged fraud, a contract's integration clause prevents the court from looking to extrinsic evidence of agreements not expressed in the contract.  *Bussey v. John Deere Co.*, 531 So. 2d 860, 862 (Ala. 1988) (quoting *Colafrancesco v. Crown Pontiac-GMC, Inc.*, 485 So. 2d 1131 (Ala. 1986) ("[G]enerally, . . .when the parties reduce a contract to writing intended to be a complete contract regarding the subject covered by the contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict such writing."); *see also Wood v. Phillips*, 849 So. 2d 951, 959 (Ala. 2002) ("[A] merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract. . .") (citation omitted).

Alabama law strictly enforces contracts for insurance when the plain language is unambiguous.  "[W]here there is no ambiguity in its terms, an insurance contract must be enforced as written. [The court] cannot defeat express provisions . . . . by rewriting the contract nor by judicial interpretation."  *Monninger v. Group Ins. Service Center, Inc.*, 494 So. 2d 41, 43 (Ala. 1986) (internal citations omitted).  Therefore, in order to impose a duty to provide service on defendant, the contract must either clearly provide for such a duty, or be ambiguous regarding such a duty.

In the Complaint, plaintiffs state that "Modern Woodmen agreed to provide service with the policy, which included reviewing Mr. Parmley's policy with him each year to ascertain whether his insurance needs were met."  (Doc. 1 ¶¶ 8, Compl.)  The Contract

contains a merger clause, which states that the contract consists only of the "certificate, the attached application for it, [and] the articles of Incorporation and By-Laws of the Society." (Doc. 22-3 at 16.)  The plaintiffs have failed to direct the court to a part of the contract that clearly expresses the alleged duty to provide service on the policy or that is ambiguous about such a duty. The court will not impose a duty to service on defendant where the contract is silent regarding any obligation to meet with the insured, service the policy, or otherwise assist the insured with regard to insurance needs. The contract does require defendant to provide information to the insured through an Annual Report, (Doc. 22-3 at 16), but plaintiffs do not contend that defendant breached this obligation.  Plaintiffs submitted an employee training manual which shows that defendant's employees were instructed, "Never let a year pass without making appointments with your policyowners to review their insurance situations with them."  (Doc. 29-1 at 6.)  Importantly, however, this is merely a training document and not part of the contract between Parmley and defendant.  Therefore, plaintiffs cannot rely on the manual to overcome summary judgment.

Because plaintiffs have not shown the existence of a contract that obligates defendant to provide policy service, plaintiffs can only overcome summary judgment if a genuine issue of material fact exists as to the application of the Waiver of policy premiums due to disability.  In the Complaint, plaintiffs allege that "Mr. Parmley retired early in or around April 1999 because of his debilitating condition.  Therefore, policy premiums should have been waived under the policy's waiver rider." (Doc. 1 ¶ 12.)  As this court held in a previous

Memorandum Opinion, the contract places the burden on the insured to submit proof of disability in a timely manner, and Parmley did not fulfill his obligation to do so.  The court stated, "The language contained in Modern Woodmen's Waiver unequivocally states, as a condition precedent, a requirement that the insured timely submit proof of total disability before Modern Woodmen is obligated to waive the deduction of policy premium payments from the Certificate."  (Doc. 27 at 7.)  This court went on to discuss why Parmley had not fulfilled that condition:

> The key inquiries related to the Waiver are proof of disability and the timely submission of such proof. It is undisputed that Mr. Parmley failed to provide Modern Woodmen with proof of his alleged disability during his lifetime. As an exception to the timely notice requirement, the Waiver provides that proof may be given "as soon as was reasonably possible." (Doc. 22-3, p. 18.) However, as a matter of law, three years has been determined to fall outside such an exception. *[All States Life Ins. Co. v.] Steward*, 5 So. 2d 787, 788 [Ala. 1942] (noting that proof was "not furnished within a reasonable time as a matter of law" where the insurer was not furnished with proof of disability until after insured's death, which was more than three years since the date his alleged disability began).
> [Footnote omitted.]
>
> In this case, Modern Woodmen notified plaintiffs, by way of a letter to plaintiff Paul Parmley, dated August 3, 2005, that no death benefits were payable under the Certificate. (Doc. 1, p. 86.) In turn, plaintiffs waited almost three years before submitting medical records, on May 14, 2008, in an attempt to prove Mr. Parmley's total disability during the period immediately preceding his death. [Footnote]
>
> > [Footnote: The court rejects plaintiffs' argument that because Modern Woodmen invited additional medical evidentiary submissions by plaintiffs (in its responsive correspondence dated May 28, 2008), Modern Woodmen is, thereby, precluded from later denying benefits based upon the failure to timely submit proof.  (*See* Doc. 24 at ¶¶ 13-15.) Modern Woodmen points out that plaintiffs' Complaint asserts that Mr. Parmley retired in 1999 due to his debilitating condition and died more than six years later.  Modern Woodmen

36

argues that "six years is not 'as soon as was reasonably possible[,]'" for the purpose of providing proof.  (Doc. 25 at ¶ 3.)  However, because the Policy clearly requires *proof* of disability, not merely notice, the critical inquiry is the time elapsed before Modern Woodmen received proof, which, in this case, is when plaintiffs first supplied Mr. Parmley's medical records.]

(Doc. 24 at ¶ 14; Doc. 7-1, Aff. Martin.) Even if the medical records supported a determination of disability, a question the court need not reach, plaintiffs cannot overcome the failure to provide proof as soon as reasonably possible, as required under the Waiver.

(Doc. 27 at 7-9.)

At oral argument, plaintiffs contended that the court could not rely on *Steward* for the rule that waiting three years before providing proof of disability is not "as soon as reasonably possible" because that was not a holding of the case.  In *Steward*, an insurance policy beneficiary sued after the insured's death to recover disability benefits alleged to have accrued because of disability of the deceased.  5 So. 2d at 785.  The insurance certificate provided:

Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium, and before the anniversary of this contract nearest the sixtieth of the date of birth, the Insured has become wholly disabled . . ., the Company will waive the payment of any premiums which may fall due . . . and will pay in full settlement for such Employee under this contract the amount of insurance in force  hereunder at the time of the receipt of due proof of such disability . . .

*Id.*  It was undisputed that the insured was disabled under the policy for three years prior to his death and that the insurance policy was cancelled due to nonpayment of premiums three years prior to the insured's death.  *Id.* at 786.  No notice of disability was ever furnished to

the insurance company during the lifetime of the insured; the first notice of disability and proofs of claim were provided within three months after the insured died. *Id.* The court first held that Alabama case law clearly held that the language of the policy required "due proof of disability as a condition precedent to the right to recover [disability benefits]." *Id.* The court then rejected plaintiff's argument that the issue of proof of disability was a condition subsequent, which would trigger liability when disability occurred, and providing proof would fix the time of payment, rather than the obligation to pay in itself.

The court went on to alternatively hold that, "accepting for the moment and for the sake of argument," even if the matter of proof was a condition subsequent, the same conclusion would be reached because proof of disability, provided three years after plaintiff claimed the benefits should have accrued, "was not furnished within a reasonable time as a matter of law." *Id.* at 787-88. The *Steward* court's holding regarding reasonableness of the amount of time to submit proof of disability was therefore an alternative holding of the case, and proper support for this case. Even if it was not, this court still finds that a period of six years is not as soon as reasonably possible as a matter of law. "[W]hat is a reasonable time is a question of law when the facts are undisputed. . ." *Provident Life & Accident Ins. Co. v. Heidelberg*, 228 Ala. 682 (1934). At oral argument, plaintiffs' counsel contended that medical records were provided to Modern Woodmen within six months of Parmley's death. A letter from Modern Woodmen dated January 24, 2006, about six months after Parmley's death, states that "[t]he medical records submitted do not indicate total disability," supporting

plaintiffs' contention that records had been submitted at that time.  (*See* Doc. 3 at 12.) However, the court emphasizes that the period of time at issue dates from the time of commencement of Parmley's alleged disability in 1999, when plaintiffs contend the Waiver should have been triggered.  The facts here are undisputed, and the court finds that six years is not as soon as reasonably possible as a matter of law.

Moreover, Parmley's deteriorating health condition would not have relieved him of his obligations under the contract.  *See Mutual Life Ins. Co. of New York v. Brunson*, 20 So. 2d 214, 217 (Ala. 1944) (holding that, where insurance policy contained requirement that proof of disability must be furnished to the insurance company while no premium was in default, insanity of insured did not excuse him from complying with that condition); *New England Mut. Life Ins. Co. v. Reynolds*, 217 Ala. 307 (1928) (where insurance policy provided for the waiver of premiums in event of insured's disability, insured's furnishing of proof of disability was a condition precedent to waiver of premium, notwithstanding the fact that the insured was insane from date the premium became due until his death).  The court in *McCutchen v. All States Life Insurance Company* affirmed this rule and discussed cases that have upheld it.  158 So. 729 (Ala. 1934).  In *McCutchen*, the guardian of an insured who had been adjudged insane brought suit to recover disability benefits on a policy that had lapsed due to nonpayment of premiums.  *Id.*  The court first reiterated that furnishing proof of disability to the insurer was a condition precedent of the disability benefit.  *Id.* at 730. After reviewing caselaw in support, the court then concluded that the insured's insanity did

39

not excuse him from complying with the condition precedent of submitting proof.  The court explained:

> [T]here is nothing in permanent total disability, within itself, to prevent making of proof when it occurs, as well as at some future time.  If the disability, like permanent insanity, renders it impossible for the insured personally to make proof at the time, it would probably disable him to make such proof at a later time. Proof may be made by next friend at the time, the same as at some future time. The rule contended for [by the insured] would strike out the requirement of proof as plainly written into the contract, and write into it a provision excepting insanity and other like cases; so that, whenever it should suit the convenience of some one to become guardian, or administrator after death, the entire status of such insurance could be reopened.

> Conditions precedent in the law of contracts, not impossible within themselves, are none the less binding, although by subsequent events performance may become impossible without fault of the promisor.

*Id.* at 732-33.  Accordingly, the failure of Mr. Parmley to comply with the contract's requirement to submit timely proof of disability is not excused because of his poor health condition or an inability to care for himself.

In plaintiffs' brief in opposition to summary judgment, plaintiffs maintain that "[t]his Court [cannot] find as a matter of law that timely notice of the claim was not made by the beneficiaries of this policy."  (Doc. 29 at 11.)  Plaintiffs claim that "Modern Woodmen had repeated notice by one of its former agents that Mr. Parmley needed policyholder service. Modern Woodmen of America agents are trained to assist policyholders during the policy period to help evaluate their insurance needs."  (*Id.*)  However, even assuming as true that defendant had notice as to Mr. Parmley's need for service, the issue is Mr. Parmley's

submission of proof of disability, not a need for service. As previously explained, the court has found no duty in the contract to service the policy, despite the fact that the training manual instructs employees to meet with policyholders. Therefore, assuming defendant was on notice of Mr. Parmley's need for service, it is irrelevant to this breach of contract claim.

Because plaintiffs have not produced admissible evidence showing that defendant was obligated to service Mr. Parmley's contract or that proof of disability was submitted to defendant "as soon as was reasonably possible," plaintiffs have failed to prove the essential elements of a breach of contract claim. Accordingly, no genuine issue of material fact exists and defendant's Motion for Summary Judgment, (Doc. 21), is due to be granted.

## V. CONCLUSION

For the foregoing reasons, plaintiff's Motion to Allow Further Discovery is due to be denied, defendant's Motion to Strike is due to be granted in part and denied in part, and defendant's Motion for Summary Judgment is due to be granted. An Order will be entered contemporaneously with this Opinion.

**DONE**, this 28th day of March, 2011.


_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

41